Alan Harris (SBN 146079)
David Zelenski (SBN 231768)
HARRIS & RUBLE
6424 Santa Monica Boulevard
Los Angeles, California 90038
Telephone: (323) 962-3777
Fax: (323) 962-3004
law@harrisandruble.com
dzelenski@harrisandruble.com

David S. Harris
NORTH BAY LAW GROUP
116 East Blithedale Avenue, Suite 2
Mill Valley, California 94941
Telephone: (415) 317-2300
Facsimile: (415) 388-8770
dsh@northbaylawgroup.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONNIE JONES and MELECIO ARCIOSA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FORESIGHT MANAGEMENT SERVICES, LLC and JEREMY GRIMES,<br><br>Defendants. | Case No. CV 08-00938JL<br><br>**PLAINTIFFS' NOTICE OF MOTION FOR FINAL APPROVAL OF CLASS-ACTION SETTLEMENT**<br><br>*Hon. James Larson*<br><br>Date:   January 27, 2010<br>Time:  9:30 a.m.<br>Place:  F |

**TO EACH PARTY AND TO EACH PARTY'S ATTORNEY OF RECORD:  NOTICE IS**

**HEREBY GIVEN** that, on January 27, 2010, 9:30 a.m. or as soon thereafter as counsel may be heard,

in Courtroom F of the above-entitled Court located at 450 Golden Gate Avenue, San Francisco,

California 94102, Plaintiffs will move for an order granting final approval of the class-action settlement

reached in the above-captioned action.  The Motion will be made and based upon this Notice of Motion;

the Declaration of Alan Harris in Support of Plaintiffs' Motion for Final Approval of Class-Action

Settlement, filed herewith; the Declaration of Markham Sherwood re Mailing of Notice of Pendency of

Class Action, Proposed Settlement, and Hearing Date for Final Court Approval, Claim Form, Request

for Exclusion Form and Report on Claim Forms and Exclusions Received, filed herewith; and all of the

pleadings, papers, and documents contained in the file of the within action.

This Motion is made pursuant to the July 24, 2009, Order granting Stipulation Continuing Final-

Approval Hearing Date, which Order directs Plaintiffs to file a final-approval motion no later than

December 23, 2009.


DATED:  December 23, 2009                    HARRIS & RUBLE

                                             _____/s/_____
                                             Alan Harris
                                             David Zelenski
                                             *Attorney for Plaintiffs*

# Table of Contents

I.      Introduction……………………………………………………………………...……..1

II.     Procedural History and Plaintiffs' Allegations…………………………………….…..2

III.    The Class Definition…………………………………………………………………...5

IV.     Summary of the Settlement………………………………………………………….5

          A.      The Total Settlement Amount and the Calculation of

               Individual Settlement Awards…………………………………………………5

          B.      Tax Implications………………………………………………………7

          C.      Plaintiffs' Incentive Awards…………………………………………7

          D.      The Civil-Penalty Amount……………………………………………8

          E.      Attorney's Fees……………………………………………………9

          F.      Class Members' Release of Claims……………………………………...…9

V.      The Provision of Notice to Class Members………………………………………11

VI.     The Settlement Is Fair, Reasonable, and Adequate……………………………….12

          A.      The Strength of Plaintiffs' Case……………………………………...12

          B.      The Likely Duration of Further Litigation………………………………15

          C.      The Risk of Maintaining Class Status Through Trial…………………………15

          D.      The Amount Offered in the Settlement………………………………………16

          E.      The Extent of Discovery Completed and the Stage of Proceedings……………17

          F.      The Experience and Views of Counsel…...........................................................17

          G.      The Reaction of Class Members to the Proposed Settlement…………………18

VII.    Conclusion………………………………………………………………………18

1
2

**Table of Authorities**

3

**CASES**

4
5

Allen v. Board of Public Education,
    495 F.3d 1306 (11th Cir. 2007) ......................................................................... 13

6

Barnhill v. Robert Saunders & Co.,
    125 Cal. App. 3d 1 (1981) ................................................................................. 14

7

Bay Ridge Operating Co. v. Aaron,
    334 U.S. 446 (2001).......................................................................................... 13

8

Bell v. Farmers Ins. Exch.,
    115 Cal. App. 4th 715 (2004) .............................................................................. 7

9
10

Bogosian v. Gulf Oil Corp.,
    621 F. Supp. 27 (E.D. Pa. 1985) ......................................................................... 8

11

Brinker v. Superior Court,
    165 Cal. App. 4th 25 (2008) ............................................................................. 13

12

Brinker v. Superior Court,
    85 Cal. Rptr. 3d 688 (2008) .............................................................................. 14

13

Class Pls. v. Seattle,
    955 F.2d 1268 (9th Cir. 1992) .......................................................................... 12

14
15

Cook v. Niedert,
    142 F.3d 1004 (7th Cir. 1997) ............................................................................ 7

16

Coop. v. DirecTV, Inc.,
    221 F.R.D. 523 (C.D. Cal. 2004) ........................................................... 12, 15, 17

17

Cotton v. Hinton,
    559 F.2d 1326 (5th Cir. 1977) .......................................................................... 17

18

Earley v. Sup. Ct. (Washington Mut. Bank, F.A.),
    79 CA4th 1420, 95 CR2d 57(2007) ................................................................... 14

19
20

Flinn v. FMC Corp.,
    528 F.2d 1169 (4th Cir.1975) ........................................................................... 17

21

Hanlon v. Chrysler Corp.,
    150 F.3d 1011 (9th Cir. 1998) .......................................................................... 12

22

Hanrahan v. Britt,
    174 F.R.D. 356 (E.D. Pa.1997).......................................................................... 17

23

In re Activision Sec. Litig.,
    723 F. Supp. 1373 (N.D. Cal. 1989) .................................................................... 9

24
25

In re Mego Financial Corp. Securities Litig.,
    213 F.3d 454 (9th Cir. 2000) ...................................................................... 16, 17

26

In re S. Ohio Correctional Facility,
    175 F.R.D. 270 (S.D. Ohio 1997)......................................................................... 7

27

In re S. Ohio Correctional Facility,
    191 F.3d 453 (6th Cir. 1999) ............................................................................. 7

28

In re Pacific Enters. Sec.Litig.,
    47 F.3d 373 (9th Cir.1995) ......................................................................... 17

Kakani v. Oracle Corp.,
    2007 U.S. Dist. LEXIS 47515 at *20 (N.D. Cal. June 19, 2007) ........................................ 10

Linney v. Cellular Alaska P'ship,
    151 F.3d 1011, 1026 (9th Cir. 1998) ......................................................................... 12

Mamika v. Barca,
    68 CA4th 487, 80 CR2d 175 (1988) ......................................................................... 14

Murphy v. Kenneth Cole Productions, Inc.,
    40 Cal. 4th 1094 (2007) ......................................................................... 16

Officers for Justice v. Civil Servs. Comm'n of the City and County of San Francisco,
    688 F.2d 615 (9th Cir. 1982) ......................................................................... 12

Rodriguez v. West Publishing Corp.,
    563 F.3d 948 (9th Cir. 2009) ......................................................................... 16

Sheppard v. Consol. Edison Co. of N.Y., Inc.,
    2002 U.S. Dist. LEXIS 16314, at *16 (S.D.N.Y. 2002) ......................................................................... 7

Staton v. Boeing Co.,
    327 F.3d 938 (9th Cir. 2001) ......................................................................... 7

Torrisi v. Tucson Elec. Power Co.,
    8 F.3d 1370 (9th Cir. 1993) ......................................................................... 12

Van Bronkhorst v. Safeco Corp.,
    529 F.2d 943 (9th Cir. 1976) ......................................................................... 15

Walling v. Youngerman-Reynolds Hardwood Co.,
    325 U.S. 419, 424 (1945) ......................................................................... 13

Wilcox v. Birtwhistle,
    21 C4th 973, 90 CR2d 260 (1999) ......................................................................... 14

**STATUTES**

29 U.S.C. 216(b) ......................................................................... 10

Cal. Bus. & Prof. Code §17200 ......................................................................... 3,9

Cal. Lab. Code § 1182.12 ......................................................................... 2

Cal. Lab. Code § 201 ......................................................................... 3, 9

Cal. Lab. Code § 201(a) ......................................................................... 3

Cal. Lab. Code § 202 ......................................................................... 9

Cal. Lab. Code § 202(a) ......................................................................... 3

Cal. Lab. Code § 203 ......................................................................... 9, 14, 16

Cal. Lab. Code § 203(a) ......................................................................... 3, 14

Cal. Lab. Code § 204 ......................................................................... 9

Cal. Lab. Code § 210 ......................................................................... 9

Cal. Lab. Code § 218 ......................................................................... 9

Cal. Lab. Code § 218.5 ......................................................................... 9

Cal. Lab. Code § 218.6 ......................................................................... 9

Cal. Lab. Code § 226 ........................................................................................................ 9, 16

Cal. Lab. Code § 226(a) ......................................................................................................... 3

Cal. Lab. Code § 226(e) ................................................................................................... 3, 14

Cal. Lab. Code § 226.7 ........................................................................................................... 9

Cal. Lab. Code § 510 .............................................................................................................. 9

Cal. Lab. Code § 512 .............................................................................................................. 9

Cal. Lab. Code § 1194 ............................................................................................................ 9

Cal. Lab. Code § 1194.2 ......................................................................................................... 9

Cal. Lab. Code § 1197 ............................................................................................................ 9

Cal. Lab. Code § 1198 ............................................................................................................ 9

Cal. Lab. Code § 2698 ............................................................................................................ 9

Cal. Lab. Code § 2699(a), (f) ................................................................................................. 4

Cal. Lab. Code § 2699(e)(2) ............................................................................................ 9, 15

Cal. Lab. Code § 2699.3 ......................................................................................................... 8

**RULES**

Fed. R. Civ. P. 23 ................................................................................................................. 12

Fed. R. Civ. P. 23(e)(1)(C) .................................................................................................. 12

**REGULATIONS**

29 C.F.R. § 778.202(a), (d) .................................................................................................. 13

8 Cal. Code Regs. § 11040(11)-(12) ..................................................................................... 2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   *Introduction.*

On July 24, 2009, this Court filed an Order Granting Plaintiffs' Motion for Conditional Certification of Settlement Class, Preliminary Approval of Class-Action Settlement, and Appointment of Claims Administrator in the above-captioned matter.  (See generally July 24, 2009, Order Granting Mot. for Conditional Certification of Settlement Class, Preliminary Approval of Class-Action Settlement, and Appointment of Claims Administrator ("Preliminary Approval Order")(Doc. No. 53.)  The Order preliminarily approved a settlement valued at $1,700,000 for the class-wide wage-and-hour claims asserted by Plaintiffs Ronnie Jones and Melecio Arciosa against Defendants Foresight Management Services, LLC and Jeremy Grimes arising from Plaintiffs' employment with Defendants.[1]  (See June 26, 2009, Superseding Decl. of Alan Harris in Supp. of Mot. for Conditional Certification of Settlement Class, Preliminary Approval of Class-Action Settlement, and Appointment of Claims Administrator ("Superseding Harris Decl.") Ex. 1 at § 5.1.R.)(Doc. No. 43).  Notice now having been provided to the 809 Class Members pursuant to the terms specified in the Order Granting Preliminary Approval (Decl. of Markham Sherwood re Mailing of Notice of Pendency of Class Action, Proposed Settlement, and Hearing Date for Final Court Approval, Claim Form, Request for Exclusion Form and Report on Claim Forms and Exclusions Received ("Sherwood Decl.") ¶¶ 2–5), and Class Members having had an opportunity either to participate in or exclude themselves from the settlement (Sherwood Decl. ¶¶ 6–8), Plaintiffs move for an order granting final approval of the class-action settlement reached by the parties. There are no objections to the settlement.

As explained more fully below, of the 809 Class Members to whom notice was mailed, 325

---

[1] The total value of the settlement is $1,700,000.  (Superseding Decl. of Alan Harris in Supp. of Mot. for Conditional Certification of Settlement Class, Preliminary Approval of Class-Action Settlement, and Appointment of Claims Administrator Ex. 1 at § 5.3.F.3, Ex. 2 at § III.I.)  Defendants agreed to streamline the claims-administration process by researching their payroll records in order to determine the amount of unpaid compensation owing to each and every Class Member—an undertaking that would have cost at least an additional $100,000, which amount would otherwise have come out of the $1,600,000 settlement fund, thereby reducing the total amount to be disbursed to Class Members. (Superseding Decl. of Alan Harris in Supp. of Mot. for Conditional Certification of Settlement Class, Preliminary Approval of Class-Action Settlement, and Appointment of Claims Administrator Ex. 1 at § 5.3.F.3, Ex. 2 at § III.I.)  In other words, Defendants economized on claims-administration costs—to the benefit of Class Members—by researching their own payroll records instead of having an unrelated third party comb through the records.

returned completed Claim Forms—approximately 40%.  (Sherwood Decl. ¶¶ 3, 6.)  Moreover, less than

five percent of the Class elected to opt out of the settlement, and no objections to the settlement were

submitted.  (Sherwood Decl. ¶¶ 7–8.)  Under the circumstances, Plaintiffs, who are represented by

experienced class-action counsel, submit that the settlement is fair, reasonable, adequate, and in the best

interest of the Class.  The Motion should therefore be granted.

## II.    *Procedural History and Plaintiffs' Allegations.*

Plaintiffs filed the initial Complaint in this matter on February 14, 2008, alleging that Defendants

had violated the California Labor Code by failing to provide employees with adequate minimum-wage

and overtime compensation,[2] failing to provide employees with adequate meal and rest breaks,[3] failing

to provide employees with adequate wage statements,[4] and failing to provide former employees with all

---

[2] The California Labor Code states that, "on and after January 1, 2008, the minimum wage for all industries shall be not less than eight dollars ($8.00) per hour."  Cal. Lab. Code § 1182.12.  The Labor Code also states:

> Eight hours of labor constitutes a day's work.  Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee.  Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.

Id. § 510(a).

[3] The California Labor Code states:

> (a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

> (b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

Id. § 226.7(a)–(b).  The applicable Order of the Industrial Welfare Commission states (1) that an employer must provide an employee with a thirty-minute meal break if the employee works for more than five hours per day and (2) that an employer must provide an employee with a ten-minute rest break if the employee works for at least three and one-half hours per day.  8 Cal. Code Regs. § 11040(11)–(12).

[4] The California Labor Code states:

> (a) Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked. . . , (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions . . . , (5) net wages earned,

1    earned wages upon the termination of employment.[5]  (Compl. ¶¶ 43–53.)  The Complaint also alleges

2    that Defendants' failure to pay adequate minimum-wage and overtime compensation is a violation of the

3    federal Fair Labor Standards Act ("FLSA")[6] and that the violations of the Labor Code and the FLSA

4    constitute violations of California's unfair-competition law, section 17200 *et seq.* of the California

5    Business and Professions Code.[7]  (Compl. ¶¶ 54–63.)  On June 4, 2008, Plaintiffs filed a First Amended

6        (6) the inclusive dates of the period for which the employee is paid, (7) the name of the
7        employee and his or her social security number, except that by January 1, 2008, only the
         last four digits of his or her social security number or an employee identification number
8        other than a social security number may be shown on the itemized statement, (8) the
         name and address of the legal entity that is the employer, and (9) all applicable hourly
9        rates in effect during the pay period and the corresponding number of hours worked at
         each hourly rate by the employee.

10       . . . .

11       (e) An employee suffering injury as a result of a knowing and intentional failure by an
         employer to comply with subdivision (a) is entitled to recover the greater of all actual
12       damages or fifty dollars ($50) for the initial pay period in which a violation occurs and
         one hundred dollars ($100) per employee for each violation in a subsequent pay period,
13       not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an
         award of costs and reasonable attorney's fees.

14   Cal. Lab. Code § 226(a), (e).

15       [5] The California Labor Code states that, "[i]f an employer discharges an employee, the wages earned
     and unpaid at the time of discharge are due and payable immediately."  Cal. Lab. Code § 201(a).  The
16   Labor Code also states:

17       If an employee not having a written contract for a definite period quits his or her
         employment, his or her wages shall become due and payable not later than 72 hours
18       thereafter, unless the employee has given 72 hours previous notice of his or her intention
         to quit, in which case the employee is entitled to his or her wages at the time of quitting.

19   Id. § 202(a).  According to the Labor Code:

20       If an employer willfully fails to pay, without abatement or reduction, in accordance with
         Sections 201 [or] 202 . . . , any wages of an employee who is discharged or who quits, the
21       wages of the employee shall continue as a penalty from the due date thereof at the same
         rate until paid [for a maximum of] 30 days.

22   Id. § 203(a).

23       [6] The Fair Labor Standards Act states:

24       Any employer who violates the provisions of section 6 or section 7 of this Act [regarding
         the payment of minimum-wage and overtime compensation] shall be liable to the
25       employee or employees affected in the amount of their unpaid minimum wages, or their
         unpaid overtime compensation, as the case may be, and in an additional equal amount as
26       liquidated damages.

     29 U.S.C. § 216(b).

27       [7] Plaintiffs note that the Complaint also alleged a non-class-wide wrongful-termination claim for
     relief on behalf of Plaintiff Jones.  (Compl. ¶¶ 64–70.)  That claim was settled by way of a separate
28   settlement agreement between Defendants, on the one hand, and Plaintiff Jones, on the other hand.

Complaint, adding a claim for relief for civil penalties pursuant to the Labor Code Private Attorneys General Act ("LCPAGA").[8]  (See First Am. Compl. ¶¶ 71–74.)

Thereafter, the parties commenced settlement discussions under the guidance of Magistrate Judge Wayne Brazil.  (Decl. of Alan Harris in Supp. of Pls.' Mot. for Final Approval of Class-Action Settlement ("Harris Decl.") ¶ 3.)  The parties attended three such settlement conferences, the first of which occurred on September 16, 2008.  (Harris Decl. ¶ 3.)  The parties also engaged in formal discovery.  (Harris Decl. ¶ 3.)  More specifically, Plaintiffs took the depositions of Defendant Grimes and third-party defense witnesses Ezekiel Griffin II and Bayinnah Moore.  (Harris Decl. ¶ 4.)  Defendants took the deposition of Plaintiff Jones.  (Harris Decl. ¶ 4.)  In addition, Defendants provided the following documents to Plaintiffs:  Plaintiffs' personnel files, Plaintiffs' pay-history reports, and Plaintiffs' punch-detail reports (i.e., records of hours worked).  (Harris Decl. ¶ 4.)  Pursuant to an order of Magistrate Judge Brazil, Defendants also provided Plaintiffs with the punch-detail reports for a sample of employees in order to enable Plaintiffs' expert to calculate the unpaid compensation owing across the Class.  (Harris Decl. ¶ 4.)  Based on the information provided by Defendants, Plaintiffs' expert calculated the amount of outstanding overtime to be approximately $700,000, the amount of compensation owing on account of foregone breaks to be approximately $1,600,000, the amount of "continuing wages" owing to former employees to be approximately $1,500,000, and the amount owing on account of improper pay stubs to be approximately $400,000.  (Notice of Mot. and Mot. for

---

[8] The LCPAGA states:

> (a) Notwithstanding any other provision of law, any provision of th[e Labor Code] that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of th[e Labor Code], may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees . . . .

> . . . .

> (f) For all provisions of [the California Labor Code] except those for which a civil penalty is specifically provided, there is established a civil penalty for a violation of these provisions, as follows: . . . .  If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

Cal. Lab. Code § 2699(a), (f).

1  Conditional Certification of Settlement Class, Preliminary Approval of Class-Action Settlement, and

2  Appointment of Claims Administrator ("Preliminary Approval Mot.") at 2:23–4:3.)

3       In May 2009, following the third settlement conference before Magistrate Judge Brazil, the

4  parties entered into a Stipulation settling Plaintiffs' class-wide claims against Defendants.  (See

5  generally Superseding Harris Decl. Ex. 1.)  The Court preliminarily approved the settlement on July 24,

6  2009.  (See generally Preliminary Approval Order.)  Under the settlement, with fewer than 50% of the

7  Class Members submitting claims, each claimant should receive 100% of his or her unpaid overtime.

8  (Harris Decl. ¶ 4.)

9  **III.  *The Class Definition.***

10      The Preliminary Approval Order defines a Class consisting of "[a]ll persons who were issued

11 one or more paychecks by Defendant Foresight Management Services, LLC, Northgate Care Center,

12 McClure Convalescent Hospital and Rehabilitation Center, San Bruno Skilled Nursing Hospital, Valley

13 Pointe Rehabilitation Center or Woodland Nursing Inn in California between February 14, 2004, and

14 [July 24, 2009]."  (Preliminary Approval Order ¶ 2.)  This Class consists of 809 individuals.  (Sherwood

15 Decl. ¶¶ 2–3.)

16 **IV.  *Summary of the Settlement.***

17      **A.      *The Total Settlement Amount and the Calculation of Individual Settlement Awards.***

18      As stated above, the total cash settlement amount to be paid by Defendants is $1,600,000.  The

19 settlement involves a payment to each Class Member who submitted a valid and timely Claim Form,

20 calculated as follows:[9]

21      (a)     The total amount of funds available for settlement is $1,600,000.  (Superseding Harris

22              Decl. Ex. 1 at § 5.3.F.3.)  Reasonable attorney's fees and costs of Plaintiffs' counsel as

23              approved by the Court shall be subtracted from this amount,[10] along with a payment of up

24 ───────────────

25      [9] According to the Claims Administrator, 320 Class Members submitted timely Claim Forms, and
    five individuals submitted late Claim Forms.  (Sherwood Decl. ¶ 6.)  Prior to the final-approval hearing,
26 Plaintiffs' counsel and Defendants' counsel will discuss whether to request that this Court honor such
    late-submitted Claim Forms.

27      [10] Concurrently with this Motion, Plaintiffs have filed a Motion for Award of Attorney's Fees and
    Reimbursement of Costs.  That Motion requests that the Court award $425,000 to Plaintiff's counsel for
28 fees and $ 29,566.61 in costs incurred while litigating this matter.  (Notice of Mot. for Award of
    Attorney's Fees and Reimbursement of Costs at 1.)

1   to $10,000 each to the named Plaintiffs to reimburse them for any lost pay and/or time

2   attributable to having assisted Class Counsel throughout this litigation.  (See Superseding

3   Harris Decl. Ex. 1 at § 5.3.F.3, Ex. 2 at § III.H–I.)  Fees to be paid to the Claims

4   Administrator on account of providing notice to the Class and administering the

5   settlement will also be deducted from the $1,600,000 amount.  (Superseding Harris Decl.

6   Ex. 1 at § 5.3.F.3.)  Finally, $200,000 will be deducted and paid to the California Labor

7   and Workforce Development Agency ("LWDA") in satisfaction of Plaintiffs' civil-

8   penalty LCPAGA claim.  (Superseding Harris Decl. Ex. 1 at § 5.3.F.3.)

9   (b)   The remaining amount will be split into two funds:  Forty percent will be set aside for

10        those Class Members who submitted approved Claim Forms and who are still employed

11        by Defendants, and sixty percent will be set aside for those Class Members who

12        submitted approved Claim Forms and who are no longer employed by Defendants.[11]

13        (Superseding Harris Decl. Ex. 1 at § 5.3.F.3.)

14   A total of 320 Class Members submitted timely Claim Forms.  (Sherwood Decl. ¶ 6.)  After

15   deducting the $200,000 amount earmarked for civil penalties, and assuming that the Court grants

16   Plaintiffs attorney's fees in an amount equal to twenty-five percent of the total settlement value

17   ($425,000),[12] that the Court reimburses Harris & Ruble for its out-of-pocket costs of $29,566.61, that the

18   Court awards each Plaintiff $10,000 as an enhancement, and that the Court approves an amount to the

19   Claims Administrator of $25,000[13], the average payment to each participating Class Member is over

20   $3,126.  The gross value of the settlement, per claimant, is $5,312.

21   **B.   Tax Implications.**

22   The Claims Administrator will issue to each Class Member who has submitted an approved

---

23   [11] A greater portion of the settlement fund is being set aside for former employees in order to

24   compensate those individuals for the continuing wages owing on account of the non-timely payment of
     final wages.

25   [12] Again,the total value of the settlement is $1,700,000, not $1,600,000.  This is because the total

26   value of the settlement includes the $1,600,000 settlement fund *plus* the $100,000 amount saved by
     having Defendants—instead of the Claims Administrator—review the internal records necessary to

27   compute the individual settlement amounts.  (Superseding Harris Decl. Ex. 2 at § III.I.)  Accordingly,
     the appropriate attorney's fee calculation should be based on the $1,700,000 amount, not $1,600,000.

28   [13] As of December 22, 2009, the Claims Administrator estimates that administration costs will not
     exceed $25,000.  (Harris Decl. ¶ 8.)

1    Claim Form all appropriate tax forms for his or her settlement share.  (Superseding Harris Decl. Ex. 1 at

2    § 5.3.F.7.)

3         **C.    *Plaintiffs' Incentive Awards.***

4         The Stipulation of Settlement contemplates that Plaintiffs be awarded an additional $10,000 each

5    to reimburse them for any lost pay and/or time attributable to having brought the above-captioned

6    lawsuit and for having assisted Plaintiffs' counsel throughout the litigation.  (Superseding Harris Decl.

7    Ex. 1 at § 5.3.C, Ex. 2 at § III.H.)  Plaintiffs' "enhancement" payments are entirely reasonable, and

8    Defendants have agreement not to make any objections to them.  (Superseding Harris Decl. Ex. 1 at

9    § 5.3.C.)

10        Plaintiffs are entitled to an additional amount for the services that they have rendered as Class

11   Representatives.  Incentive awards "are not uncommon and . . . serve an important function in promoting

12   class action settlements," Sheppard v. Consol. Edison Co. of N.Y., Inc., 2002 U.S. Dist. LEXIS 16314,

13   at *16 (S.D.N.Y. 2002), and "[c]ourts routinely approve incentive awards to compensate named

14   [p]laintiffs for the services they provided and the risks they incurred during the course of the class action

15   litigation."  In re S. Ohio Correctional Facility, 175 F.R.D. 270, 272 (S.D. Ohio 1997), reversed on other

16   grounds, 191 F.3d 453 (6th Cir. 1999).  See also Staton v. Boeing Co., 327 F.3d 938, 100 (9th Cir. 2001)

17   ("The district court must evaluate [incentive] awards individually, using 'relevant factors includ[ing] the

18   actions the [p]laintiffs have taken to protect the interests of the class, the degree to which the class has

19   benefited from those actions, . . . [and] the amount of time and effort the Plaintiffs expended in pursuing

20   the litigation.'") (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1997)). See also Bell v.

21   Farmers Ins. Exch., 115 Cal. App. 4th 715, 726 (2004) (affirming an order for "service payments to the

22   five named plaintiffs compensating them for their efforts in bringing suit").  In light of Plaintiffs'

23   willingness to come forward with this action on behalf of Defendants' employees and in light of their

24   efforts in advancing the litigation and securing a net average settlement award of over $3,126, an

25   enhancement of $10,000 each represents a reasonable amount.  See, e.g., Cook, 142 F.3d at 1016

26   (approving an incentive award of $25,000 to a class representative); Bogosian v. Gulf Oil Corp., 621 F.

27   Supp. 27, 28 (E.D. Pa. 1985) (approving an incentive award of $20,000 apiece to two class

28   representatives).  Plaintiffs informed counsel of their situation and of their similarity with Class

1   Members.  (See Superseding Harris Decl. Ex. 5 at ¶¶ 9, 11; Ex. 6 at ¶¶ 13, 16.)  In furtherance of this

2   action, they also expended a significant amount of time with counsel, having met with their attorneys in

3   person or by telephone on numerous occasions.  (See Superseding Harris Decl. Ex. 5 at ¶¶ 9, 11; Ex. 6 at

4   ¶¶ 13, 16.)  Indeed, Plaintiff Jones was deposed by Defendants (Superseding Harris Decl. Ex. 1 at

5   § 2.B), and he participated in multiple mediation sessions before Magistrate Judge Brazil (Superseding

6   Harris Decl. Ex. 6 at ¶ 13.)

7         The notice mailed by the Claims Administrator specifically apprised Class Members of the fact

8   that each individual Plaintiff would be seeking a $10,000 enhancement award.  (Superseding Harris

9   Decl. Ex. 2 at § III.H.)  Tellingly, not a single objection was filed as to the enhancement-award request.

10  (Sherwood Decl. ¶ 8.)  In light of Class Members' acceptance of the fact that the parties contemplated

11  setting aside an additional amount for the named Plaintiffs, and in light of Plaintiffs' time spent bringing

12  and maintaining this action, Plaintiffs should each be awarded a payment of $10,000.  As a result of

13  their efforts, Defendants' employees will finally receive the outstanding compensation to which they are

14  entitled.

15         **D.      *The Civil-Penalty Amount.***

16        Again, the Stipulation of Settlement provides for a civil-penalty payment of $200,000 to the

17  LWDA.  (Superseding Harris Decl. Ex. 1 at § 5.3.F.3, Ex. 2 at § III.C.)  As explained in Plaintiffs'

18  Preliminary Approval Motion, the Labor Code permits a plaintiff to collect civil penalties from an

19  employer for the violation of provisions of the California Labor Code.  (Preliminary Approval Mot. at

20  12:3–13:26.)  In order to collect civil penalties, Plaintiffs need to demonstrate that they have complied

21  with the notice requirements of Labor Code section 2699.3 and that Defendants, in fact, violated a

22  provision of the Labor Code giving rise to a civil penalty.  Because Plaintiffs have complied with the

23  notice requirements and because Defendants have violated provisions of the Labor Code giving rise to

24  civil penalties, Plaintiffs can assert a cause of action pursuant to the LCPAGA.

25        Plaintiffs' Preliminary Approval Motion notes that the total amount of outstanding civil penalties

26  may exceed $1,000,000.  (Preliminary Approval Mot. at 3:1–3.)  However, "a court may award a lesser

27  amount than the maximum civil penalty amount specified by [the LCPAGA] if, based on the facts and

28  circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary, or

confiscatory." Cal. Lab. Code § 2699(e)(2). Plaintiffs submit that the $200,000 amount allotted for

civil penalties is entirely reasonable in light of section 2699(e)(2).

### E.     Attorney's Fees.

Class Counsel is requesting up to twenty-five percent of the total value of the settlement, or

$425,000 in attorney's fees. The support for the request for fees is the subject of a separate Motion, set

for hearing concurrently with this Motion, and the payment of this sum will extinguish all claims for

fees incurred for all work performed by Plaintiffs' counsel in this case from its inception to its

conclusion in the coming months. Suffice it to say that the contemplated fee award is reasonable under

Ninth Circuit precedent. In common-fund cases such as this, the Ninth Circuit has established that

twenty-five percent is the "usual" award for attorney's fees. See, e.g., In re Activision Sec. Litig., 723

F. Supp. 1373, 1378–79 (N.D. Cal. 1989) (noting that, in most cases, the benchmark is twenty-five to

thirty percent).

### F.     Class Members' Release of Claims.

The release of claims contemplated by the Stipulation of Settlement is narrowly tailored to *only*

those claims asserted by Plaintiffs in the above-captioned litigation. More specifically, according to the

Stipulation, Class Members who have not opted out by submitting a request for exclusion are deemed to

have released:

> any and all claims *that were asserted in the Litigation against Defendants* by Plaintiffs on
>
> behalf of Class Members accruing at any time prior to the entry by the Court of the Order
>
> of Preliminary Approval, including claims arising under California Labor Code sections
>
> 201, 202, 203, 204, 210, 218, 218.5, 218.6, 226, 226.7, 510, 512, 1194, 1194.2, 1197, and
>
> 1198 (and related provisions under the Industrial Welfare Commission Wage Orders);
>
> related claims under section 17200 *et seq.* of the California Business and Professions
>
> Code; and related claims [for civil penalties] under section 2698 *et seq.* of the California
>
> Labor Code.

(Superseding Harris Decl. Ex. 1 at § 5.1.O (emphasis supplied). See also Superseding Harris Decl. Ex. 1

at § 5.6.A.) In addition, *only* if a Class Member has affirmatively opted into the settlement by

submitting a Claim Form will he or she be deemed to have released any of the FLSA claims that were

1   asserted by Plaintiffs against Defendants.  (Superseding Harris Decl. Ex. 1 at § 5.6.B ("Plaintiffs and

2   those Class Members *who have submitted Approved Claims*, as well as their successors in interest, shall

3   conclusively be deemed to have fully released all Released Claims Under the FLSA . . . .") (emphasis

4   supplied).  See also Superseding Harris Decl. Ex. 1 at § 5.1.P (defining "Released Claims Under the

5   FLSA" as "any and all claims that were asserted in the Litigation against Defendants by Plaintiffs on

6   behalf of Class Members accruing at any time prior to the entry by the Court of the Order of Preliminary

7   Approval and arising under the FLSA").)

8         In other words, the Stipulation of Settlement draws a distinction between the claims brought by

9   Plaintiffs under California law, on the one hand, and the claims brought by Plaintiffs under the FLSA,

10  on the other hand.  Only if a Class Member opts into the settlement by submitting a Claim Form will he

11  or she be deemed to have released his or her FLSA claims against Defendants.  *Put differently, a Class*

12  *Member who did nothing in response to the notice will still have the right to assert an FLSA claim*

13  *against Defendants*.  As explained by the Northern District of California:

14         The FLSA prohibits traditional class actions and authorizes only an *opt-in* collective

15         action.  29 U.S.C. 216(b).  Under no circumstances can counsel collude to take away

16         FLSA rights including the worker's right to control his or her own claim without the

17         burden of having to opt out of someone else's lawsuit.  Workers who voluntarily send in

18         a claim form and affirmatively join in the action, of course, can be bound to a full release

19         of all federal and state rights.  But [it] is unconscionable to try to take away the FLSA

20         rights of *all* workers, whether or not they choose to join in affirmatively.

21  Kakani v. Oracle Corp., 2007 U.S. Dist. LEXIS 47515 at *20 (N.D. Cal. June 19, 2007) (emphasis in

22  original).  The Stipulation of Settlement adheres to the distinction set forth in Kakani.

23         According to the Claims Administrator, 320 Class Members have submitted timely Claim Forms.

24  (Sherwood Decl. ¶ 6.)  Those Class Members, then, are releasing their claims under the California Labor

25  Code and their claims under the FLSA.  Nineteen Class Members submitted valid requests for

26  exclusion.[14]  (Sherwood Decl. ¶ 7.)  Those Class Members, then, are releasing neither their California-

27

28         [14] In point of fact, Plaintiffs note that thirty-three Class Members actually submitted exclusion
    requests.  However, of those thirty-three Class Members, fourteen also simultaneously submitted Claim
    Forms.  (Sherwood Decl. ¶ 7.)  Two additional Class Members submitted exclusion requests after the

1   law claims nor their FLSA claims.  The remaining Class Members who neither submitted a Claim Form

2   nor elected to opt out of the settlement are releasing *only* their claims under California law.

3   **V.      *The Provision of Notice to Class Members.***

4          The Court approved the content of the notice used to inform Class Members of their rights

5   concerning participation in and exclusion from the settlement.  (Preliminary Approval Order ¶ 6.)  The

6   Court also appointed Gilardi & Co. as Claims Administrator.  (Preliminary Approval Order ¶ 4.)

7   Pursuant to the Preliminary Approval Order, Gilardi & Co. mailed a Notice of Pendency of Class

8   Action, Proposed Settlement, and Hearing Date for Final Court Approval to the 809 Class Members,

9   along with a Claim Form and a Request for Exclusion Form, on September 22, 2009.  (Sherwood Decl.

10  ¶ 3.)  Also pursuant to the Preliminary Approval Order, Class Members were given until November 6,

11  2009, to submit Claim Forms, objections, or exclusion requests.  (Sherwood Decl. ¶ 6.  See also

12  Preliminary Approval Order ¶ 8.)

13         Prior to mailing notice to Class Members, Gilardi & Co. processed Class Members' names and

14  addresses through the National Change of Address Database to update any addresses on file with the

15  U.S. Postal Service ("USPS").  (Sherwood Decl. ¶ 2.)  After mailing notice to Class Members, Gilardi &

16  Co. received nine notice packets returned by the USPS with updated addresses, as well as seventy-five

17  notice packets returned by the USPS with undeliverable addresses.  (Sherwood Decl. ¶¶ 4–5.)  With

18  respect to those notice packets returned with updated addresses, Gilardi & Co. immediately re-mailed

19  the notice packets to the updated addresses supplied by the USPS.  (Sherwood Decl. ¶ 4.)  With respect

20  to those notice packets returned with undeliverable addresses, Gilardi & Co. performed address searches

21  through a third-party locator service and was able to find updated addresses for fifty Class Members.

22  (Sherwood Decl. ¶ 5.)  Gilardi re-mailed notice to those fifty Class Members.  (Sherwood Decl. ¶ 5.)

23         Again, as of the November 6, 2009, deadline, 320 Class Members submitted timely Claim

24  Forms.  (Sherwood Decl. ¶ 6.)  Also as of November 6, 2009, nineteen timely exclusion requests and

25  zero objections were submitted.  (Sherwood Decl. ¶¶ 7–8.)

26  deadline set by the Court, one of whom also simultaneously submitted a Claim Form.  (Sherwood Decl.
    ¶ 7.)  Pursuant to the notice, the fifteen simultaneously submitted exclusion requests are invalid.
27  (Sherwood Decl. ¶ 7.)  Accordingly, the total number of opt-outs is actually only nineteen.  (Sherwood
    Decl. ¶ 7.)  With respect to the valid yet late-submitted exclusion request, Plaintiffs' counsel will discuss
28  whether to honor it with counsel for Defendants.

1   ***VI.      The Settlement Is Fair, Reasonable, and Adequate.***

2          Rule 23 of the Federal Rules of Civil Procedure states that "[a] court may approve a

3   settlement . . . that would bind class members only after a hearing and on finding that the settlement . . .

4   is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C).  <u>See also</u> <u>Class Pls. v. Seattle</u>, 955 F.2d

5   1268, 1276 (9th Cir. 1992) (stating that class-action settlements should be approved if they are

6   "fundamentally fair, adequate and reasonable.").  This determination requires a balancing of several

7   factors, namely, the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of

8   further litigation; the risk of maintaining class-action status throughout the trial; the amount offered in

9   settlement; the extent of discovery completed; the stage of the proceedings; the experience and views of

10  counsel; and the reaction of the class members to the proposed settlement.  <u>See</u> <u>Linney v. Cellular</u>

11  <u>Alaska P'ship</u>, 151 F.3d 1011, 1026 (9th Cir. 1998); <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1026 (9th

12  Cir. 1998); <u>Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.</u>, 221 F.R.D. 523, 525–26 (C.D. Cal. 2004).

13         "The relative degree of importance to be attached to any particular factor depends upon and is

14  dictated by the nature of the claims advanced, the types of relief sought, and the unique facts and

15  circumstances presented by each individual case," <u>Officers for Justice v. Civil Servs. Comm'n of the</u>

16  <u>City and County of San Francisco</u>, 688 F.2d 615, 625 (9th Cir. 1982), and "district courts have wide

17  discretion in assessing the weight and applicability of each factor," 5 James William Moore *et al*.,

18  <u>Moore's Federal Practice</u> § 23.85(2)(a) (3d ed. 2003).  <u>See also</u> <u>Torrisi v. Tucson Elec. Power Co.</u>, 8

19  F.3d 1370, 1376 (9th Cir. 1993).  As a matter of fact, all factors do not necessarily apply in every case,

20  and, under certain circumstances, the presence of a single factor alone may provide sufficient grounds

21  for court approval.  <u>Id.</u>  In the situation presently before the Court, however, *every single factor cuts in*

22  *favor of approval*.  Accordingly, the Court should conclude that the settlement is fair, reasonable, and

23  adequate.

24         ***A.      The Strength of Plaintiffs' Case.***

25         As explained above, Plaintiffs contend that Defendants failed to provide Class Members with

26  appropriate overtime wages.  Plaintiffs also contend that Defendants failed to provide Class Members

27  with the ten-minute rest periods and thirty-minute meal periods mandated by the California Labor Code.

28  In addition, Plaintiffs contend that Defendants failed to provide Class Members with pay stubs

1   containing all of the information required by the Labor Code and that Defendants willfully failed to pay

2   in a timely fashion those Class Members whose employment had been terminated.  Finally, Plaintiffs

3   contend that Defendants' failure to provide appropriate overtime wages, the failure to provide adequate

4   meal and rest periods, and the failure to provide adequate pay stubs, as well as the failure to pay

5   terminated employees in a timely fashion, subjects Defendants to the civil penalties specified by the

6   LCPAGA.  Settlement is an extremely attractive option for Plaintiffs and Defendants, given the

7   reasonable arguments that can be made by both sides as to each of Plaintiffs' claims for relief.

8        Settlement is an attractive option with respect to Plaintiffs' unpaid-overtime claim.  As explained

9   in Plaintiffs' Motion for Preliminary Approval, a substantial portion of Class Members' alleged damages

10  in this regard stem from Defendants' *miscalculation* of Class Members' overtime rates.  (Preliminary

11  Approval Mot. at 6:8–7:25.)  According to Plaintiffs, compensation owing on account of foregone meal

12  and rest breaks must be included in the regular rate used to calculate the correct overtime rate of

13  compensation.  (Preliminary Approval Mot. at 6:14–16 (citing Walling v. Youngerman-Reynolds

14  Hardwood Co., 325 U.S. 419, 424 (1945), and Bay Ridge Operating Co. v. Aaron, 334 U.S. 446, 468–69

15  (2001)).  See also Preliminary Approval Mot. at 7:12–25 (citing Allen v. Board of Public Education, 495

16  F.3d 1306 (11th Cir. 2007)).)  However, there is authority—at least under federal law—that such

17  amounts should be *excluded* from the overtime-rate computation.  See 29 C.F.R. § 778.202(a), (d)

18  (stating that "payment at premium rates . . . made pursuant to the requirements of [an] applicable

19  statute" "may be excluded from the regular rate used to calculate overtime").  Accordingly, there is

20  substantial risk inherent in Plaintiffs' overtime claim.

21       Likewise, settlement is an attractive option with respect to Plaintiffs' meal-and-rest-break claim.

22  Based on a review of the materials produced by Defendants, Plaintiffs' concede that the number of

23  breaks missed by any given Class Member requires a rather individualized inquiry, depending, for

24  example, on the specific location at which any given Class Member was employed.  See, e.g., Brinker v.

25  Superior Court, 165 Cal. App. 4th 25, 48–50, 58–60 (2008) (vacating a class-certification order by

26  explaining that whether employees have been denied the rest and meal breaks to which they were

27  entitled or whether they voluntarily chose not to take them is a highly individualized inquiry), *review*

28  *granted by* 85 Cal. Rptr. 3d 688 (2008).  This strongly undercuts Plaintiffs' ability to maintain the

1   above-captioned action on a class-wide basis.

2        Similarly, settlement is an attractive option with respect to Plaintiffs' pay-stub claim.  California

3   law allows an employee to sue for the failure to provide proper information on pay stubs if the employee

4   has "suffer[ed] injury as a result of a knowing and intentional failure by an employer" to include the

5   required information.  Cal. Lab. Code § 226(e).  If this case were to proceed without settlement,

6   Defendants would vigorously litigate the issues of whether the alleged pay-stub deficiencies caused any

7   actual "injury" to Class Members and whether any alleged deficiency was "knowing and intentional."

8        Settlement is also an attractive option with respect to Plaintiffs' continuing-wage claim.  Section

9   203 of the California Labor Code requires that an employer pay continuing wages only if its failure to

10  pay all wages upon termination was "willful."  Id. § 203(a).  Based on a review of the materials

11  produced by Defendants, Plaintiffs have concluded that Defendants can arguably claim that their alleged

12  violation was not willful.  In addition, it is far from settled whether the failure to pay overtime wages

13  and wages on account of foregone meal and rest breaks results in continuing-wage liability.  See Hon.

14  Ming W. Chin, et al., California Practice Guide:  Employment Litigation ¶ 11:1464.1 ("Employers may

15  argue that because "wages" and overtime pay have different sources, Lab. C. § 203's waiting time

16  penalties for "wages" do not apply to overtime pay  [See Earley v. Sup. Ct. (Washington Mut. Bank,

17  F.A.) (200) 79 CA4th 1420, 1430, 95 CR2d 57, 63—"An employee's right to wages and overtime

18  compensation clearly have different sources"; see also Wilcox v. Birtwhistle (1999) 21 C4th 973, 979,

19  90 CR2d 260, 264—words and phrases given a particular meaning in one part of a statute must be given

20  same meaning in other parts of the statute; Mamika v. Barca (1998) 68 CA4th 487, 493, 80 CR2d 175,

21  178—penalty of continued "wages" for late payment is computed by reference to daily straight-time pay

22  (not overtime)].") (The Rutter Group 2009) (emphasis in original).  See also Barnhill v. Robert Saunders

23  & Co., 125 Cal. App. 3d 1, 7 (1981) (explaining that liability under section 203 is improper where an

24  employer deducted a setoff from an employee's final paycheck at a time when the law governing the

25  propriety of setoffs from employees' paychecks was unclear).  Insofar as the failure to pay overtime

26  does not result in continuing-wage liability, the extent of Defendants' liability is substantially undercut.

27       Finally, settlement is an attractive option with respect to Plaintiffs' allegations concerning civil

28  penalties.  Again, a court "may award a lesser amount than the maximum civil penalty amount specified

1   by [the LCPAGA] if, based on the facts and circumstances of the particular case, to do otherwise would

2   result in an award that is unjust, arbitrary and oppressive, or confiscatory."  Cal. Lab. Code § 2699(e)(2).

3       **B.      *The Likely Duration of Further Litigation.***

4       This action has been pending in the court system for close to two years, and Class Members still

5   remain uncompensated for the alleged violations.  Granting approval of this settlement will create a fund

6   to remedy those violations.  In the absence of final approval of the settlement, the likely duration of

7   further litigation of this action is in excess of a year, given that the putative Class would still have to be

8   certified.  (See Preliminary Approval Order at 2:24–25 ("*For purposes only of settlement*, a Class

9   defined as follows is *conditionally* certified . . . .") (emphasis supplied).)  As courts have explained,

10  "unless [a] settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and

11  expensive litigation with uncertain results."  Nat'l Rural Telecomms. Coop., 221 F.R.D. at 526.  Indeed,

12  settlement is encouraged by courts when possible.  E.g., Van Bronkhorst v. Safeco Corp., 529 F.2d 943,

13  950 (9th Cir. 1976) ("It hardly seems necessary to point out that there is an overriding public interest in

14  settling and quieting litigation.  This is particularly true in class action suits which are now an ever

15  increasing burden to so many federal courts and which frequently present serious problems of

16  management and expense.").  Given these considerations, and in light of the substantial amounts to be

17  provided to participating Class Members, the Court should grant final approval of the settlement.

18      **C.      *The Risk of Maintaining Class Status Through Trial.***

19      With respect to the risk of maintaining class-action status up to and throughout trial, Plaintiffs

20  acknowledge that there is no guarantee that class certification could be obtained on the scope agreed to

21  in the Stipulation of Settlement and that class certification (or certification as a collective action under

22  the FLSA) might not occur at all if the issue were litigated.  As explained above in connection with the

23  strength of Plaintiffs' case, Plaintiffs' claims inherently require a somewhat individualized inquiry, and,

24  if Defendants were to successfully oppose a contested motion for certification, the Class would recover

25  nothing.  Accordingly, this factor also weighs in favor of final approval.

26      **D.      *The Amount Offered in the Settlement.***

27      The total amount of cash set aside for Class Members is $1,600,000.  Although this is not the

28  amount that either Plaintiffs or Defendants hoped for, settlement represents a compromise by the parties

1    in light of the risks and costs of further litigation.

2           In determining whether the amount offered in settlement is fair, the Ninth Circuit has suggested

3    that a court must compare the settlement amount to the parties' "estimates of the maximum amount of

4    damages recoverable in a successful litigation."  See In re Mego Financial Corp. Securities Litig., 213

5    F.3d 454, 459 (9th Cir. 2000).  However, the Ninth Circuit has more recently held that, in making such a

6    comparison, a court need not consider the potential enhancement of damages through penalties.  See

7    Rodriguez v. West Publishing Corp., 563 F.3d 948, 955 (9th Cir. 2009).  In Rodriguez, as here, a

8    substantial portion of the potential damages were funds that are theoretically recoverable as penalties:

9    In Rodriguez, treble damages were at issue; here, penalties for violations of sections 203 and 226 of the

10   California Labor Code are at play.[15]  Rodriguez teaches that, in considering whether to approve an

11   antitrust class-action settlement, a court may determine that a settlement is "reasonable even though [the

12   court] evaluated the monetary potion of the settlement based only on an estimate of single damages."

13   Rodriguez, 563 F.3d at 955.  Similarly, here, the Court may consider the settlement based only on an

14   estimate of actual damages, putting the penalty aspects of the case to the side in the process.

15          Given the uncertainty and risks faced by the parties to this litigation, it is reasonable for the

16   Court to grant final approval of the settlement.  The amount is particularly substantial in light of the

17   additional delay in securing any payment that would occur were the settlement not approved.  After all,

18   even if Plaintiffs prevailed at trial, an appeal by Defendants could delay compensating Class Members

19   by years.  Quite simply, the settlement amount here is adequate and reasonable in the face of the

20   inherent risks involved with further litigation.

21          **E.      The Extent of Discovery Completed and the Stage of Proceedings.**

22          The parties have conducted significant discovery, both formal and informal.  A substantial

23   number of documents have been exchanged and reviewed, multiple depositions have taken place, and

24   three mediation sessions have occurred.  In any event, whether or not extensive formal discovery has

25   been conducted, "in the context of class action settlements, 'formal discovery is not a necessary ticket to

26   the bargaining table' where the parties have sufficient information to make an informed decision about

27          [15] In Murphy v. Kenneth Cole Productions, Inc., 40 Cal. 4th 1094 (2007), the California Supreme
     Court compared Labor Code penalties such as those at issue in this case to treble damages.  Murphy, 40
28   Cal. 4th at 1103–04.)

1   the settlement." <u>Dunleavy v. Nadler</u>, 213 F.3d 454, 459 (quoting <u>Linney</u>, 151 F.3d at 1239).

2       **F.      *The Experience and Views of Counsel.***

3           In assessing the adequacy of the terms of a settlement, a trial court is entitled to—and should—

4   rely upon the judgment of experienced counsel for the parties.  See <u>Nat'l Rural Telecomms. Coop.</u>, 221

5   F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely

6   acquainted with the facts of the underlying litigation.") (internal quotations omitted).  <u>See also</u> <u>Cotton v.</u>

7   <u>Hinton</u>, 559 F.2d 1326, 1330 (5th Cir. 1977).  The basis for such reliance is that "[p]arties represented

8   by competent counsel are better positioned than courts to produce a settlement that fairly reflects each

9   party's expected outcome in the litigation." <u>In re Pacific Enters. Sec. Litig.</u>, 47 F.3d 373, 378 (9th

10  Cir.1995).  Indeed, when evaluating a proposed settlement, absent fraud, collusion, or the like, a court

11  should be hesitant to substitute its own judgment for that of counsel.  See <u>Flinn v. FMC Corp.</u>, 528 F.2d

12  1169, 1173 (4th Cir.1975); <u>Hanrahan v. Britt</u>, 174 F.R.D. 356, 366-368 (E.D. Pa.1997) (finding that a

13  presumption of correctness applies to a class-action settlement reached in arm's length negotiations

14  between experienced, capable counsel after meaningful discovery).

15          Here, Plaintiffs' counsel has considerable experience in litigating employment matters, class

16  actions, and other complex litigation.  (Harris Decl. ¶ 2.)  Plaintiffs' counsel has concluded that the

17  terms of the settlement are fair, adequate, reasonable, and in the best interests of the Class as a whole.

18  (Harris Decl. ¶ 5.)  This factor weighs in favor of approving the settlement.

19      **G.      *The Reaction of Class Members to the Proposed Settlement.***

20          The reaction of Class Members to this settlement has been entirely favorable.  As explained by

21  the Central District, "[i]t is established that the absence of a large number of objections to a proposed

22  class action settlement raises a strong presumption that the terms of a proposed class settlement action

23  are favorable to the class members" <u>Nat'l Rural Telecomms. Coop.</u>, 221 F.R.D. at 529.  In the matter

24  presently before the Court, not a single objection has been filed, and less than five percent of the total

25  Class has chosen to opt out.  (Sherwood Decl. ¶¶ 7–8.)  Of those individuals who have chosen to

26  exclude themselves, there is no indication that any was motivated by dissatisfaction with the settlement

27  amount.

28          In light of the risks of further litigation, this settlement provides a valuable benefit to

participating Class Members:  They finally will receive compensation for having worked without meal breaks and rest breaks, and they finally will receive compensation for outstanding overtime wages. Accordingly, the Court should grant final approval.

**VII.    Conclusion.**

The parties have reached a settlement to which no employee objects.  The settlement disposes of the risks, costs, and delay associated with further litigation.  Defendants deny any and all liability in this action, but, through settlement, seek to obtain closure.  The individuals who submitted claims and the State of California will receive substantial payments.  For reasons set forth above, the Court should grant final approval.

DATED:  December 23, 2009                           HARRIS & RUBLE

                                                    _____/s/_____

                                                    Alan Harris
                                                    David Zelenski
                                                    *Attorneys for Plaintiff*

PLS.' NOTICE OF MOT. FOR FINAL APPROVAL OF CLASS-ACTION SETTLEMENT